PENNWALT CORPORATION, Plaintiff,

v.

PLOUGH, INC., Defendant.

Civ. A. No. 79–226.

United States District Court,
D. Delaware.

Dec. 5, 1979.

Richard D. Allen, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Matthew J. Broderick, Aaron C. F. Finkbiner, III, and John M. Coleman, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Joseph A. Rosenthal, Morris & Rosenthal, Wilmington, Del., Donald H. Green, and Judith E. Lesser, Wald, Harkrader & Ross, Washington, D. C., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This case involves a complaint and a substantially identical counterclaim in which the plaintiff Pennwalt Corporation ("Pennwalt"), manufacturer of DESENEX, and the defendant Plough, Inc. ("Plough"), manufacturer of AFTATE, charge each other with false, misleading and deceptive advertising of their respective athlete's foot remedies. This conduct allegedly constitutes a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as violations of pendent state law claims.

The Court is presented with a variety of disputes relating to discovery matters in this litigation. While most of the initial disputes have been resolved by the parties, four discovery issues remain unresolved, and were the subject of a hearing before this Court on September 27, 1979 and subsequent letter memoranda, the last being dated October 5, 1979.

I. *Is Discovery by Pennwalt as to Weekly, Monthly, Quarterly, and Annual Promotional Costs for AFTATE FOR ATHLETE'S FOOT Proper Under F.R.Civ.P. 26?*

In its second request for production of documents, Pennwalt has sought "All documents showing or relating in any way to weekly, monthly and annual promotional costs for AFTATE, DESENEX or other products for the treatment of athlete's foot for the years 1976, 1977, 1978 and 1979." Plough has objected to production of these documents, contending that they are highly confidential, and that Pennwalt has failed to show their relevance to any issue in this case.[1]

In determining whether the requested material is properly discoverable, the starting point is F.R.Civ.P. 26(b)(1):

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This language has been given a very broad reading, and relevancy is construed more loosely in the discovery context than at trial. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2008 (1970 ed.).

The liberal language of Rule 26(b)(1) is tempered somewhat by the availability of protective orders under Rule 26(c), in which Plough has sought refuge. That Rule empowers district courts to order, *inter alia*, "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

■ No absolute privilege exists for trade secrets or other confidential information under this Rule. Rather, if a movant can demonstrate that an inspection of such information is relevant and necessary to prepare its case for trial, or that denial of inspection would prejudice the movant, result in hardship or work an injustice, disclosure with proper safeguards is appropriate. *See Struthers Scientific & Int'l Corp. v. General Foods Corp.*, 50 F.R.D. 184, 186 (D.Del.1970).[2]

■ The material sought by Pennwalt relating to promotional costs for AFTATE is relevant to the subject matter of this litigation and is properly discoverable. In its complaint, Pennwalt seeks injunctive relief, an accounting for profits, and money damages.[3] In order for Pennwalt to prevail in its request for injunctive relief, there must be a showing that the advertisements, once established as false, have a tendency or likelihood to deceive consumers. *See, e. g., Gold Seal Co. v. Weeks*, 129 F.Supp. 928, 940 (D.D.C.1955), *aff'd sub nom. S. C. Johnson & Sons v. Gold Seal Co.*, 97 U.S.App. D.C. 282, 230 F.2d 832 (D.C.Cir.1956) (per curiam). The standards for proving a claim for money damages, however, are more rigorous. The Third Circuit Court of Appeals has held:

---

**1.** Specifically, Plough asserts that the material sought would reveal to Pennwalt, Plough's principal competitor in the athlete's foot market, "the inner workings of Plough's corporate marketing strategy." Revelation of such highly sensitive information, it is contended, would enable Pennwalt to obtain an unfair competitive advantage. (Affidavit of Harry B. Solmson)

**2.** On October 23, 1979, the Court signed a protective order, submitted jointly by the parties, which provides safeguards for the disclosure of other sensitive commercial information.

**3.** Plough has sought virtually identical relief in its counterclaim. Because the factual allegations and requested relief in these competing claims parallel each other, the parties have agreed as to discovery matters "that what would be sauce for the goose would be sauce for the gander." That is, any material agreed or ordered to be produced by one side would trigger an obligation of the other party to produce similar materials. (Transcript, September 27, 1979 Hearing, at 30.)

[A] plaintiff in order to make out a cause of action for damages under Section 43(a) must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public. . . . This does not place upon the plaintiff a burden of proving detailed individualization of .loss of sales. Such proof goes to quantum of damages and not to the very right to recover. However, there must be a showing of some customer reliance on the false advertisement. (Citations omitted)

*Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir. 1958).

In the instant case, proof of increased sales during a particular time period, or in a given geographic area, that corresponded to increased promotional efforts with advertisements shown to be false may be admissible for purposes of meeting this burden. Accordingly, promotional costs for AFTATE are relevant to the subject matter of this litigation, and are properly discoverable.

The Court is not unmindful of the highly sensitive nature of this commercial information. Consequently, disclosure of this information will be subject to the provisions of the second sentence of paragraph 3 of the protective order signed by the Court on October 23, 1979.

II. *Is Discovery By Plough As to Athlete's Foot Products Other Than DESENEX and AFTATE FOR ATHLETE'S FOOT Proper Under F.R. Civ.P. 26?*

Plough has sought discovery concerning comparisons of, claims for, and the efficacy of athlete's foot products other than Plough's AFTATE and Pennwalt's DESENEX. Pennwalt's position is that Plough has standing to sue only to the extent that an allegedly false claim can reasonably be expected to injure Plough. It asserts that Plough is an improper party under § 43(a) to challenge Pennwalt's advertisements insofar as those ads might falsely compare DESENEX to the athlete's foot remedy of a third competitor. Since Plough lacks standing to challenge such representations, Pennwalt argues, discovery as to athlete's foot products other than DESENEX and AFTATE is not relevant to the subject matter of this litigation.

A suit under § 43(a) may be brought by "any person who believes that he is or is likely to be damaged" and may challenge "any false description or representation" used in connection with goods sold in commerce. 15 U.S.C. § 1125(a).[4] Passage of the Lanham Act prompted a relaxation of the strict standing requirements governing common law false advertising claims, as courts have given it a broad reading. *See e. g., L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 651 (3d Cir. 1954); *Alfred Dunhill Ltd. v. Interstate Cigar Company, Inc.,* 499 F.2d 232, 236–37 (2d Cir. 1974); *Ames Publishing Co. v. Walker-Davis Publications,Inc.,* 372 F.Supp. 1, 13–14 (E.D.Pa. 1974). In spite of the obviously wide scope of its terms, however, the courts have stopped short of construing "any person" to mean everyone and have held that consumers may not bring actions under § 43(a). *See Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686, 692–94 (2d Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971).

In order that the congressional purpose of ensuring fair competitive practices in preventing consumer fraud be achieved, a line of cases, relied upon here by Plough, recognizes the concept of a "vicarious avenger." That is, the competitor/plaintiff simultaneously pursues its own and the public's right to be protected against false advertising. *See John Wright, Inc. v. Casper Corp.,*

---

4. 15 U.S.C. § 1125(a) reads, in pertinent part: Any person who shall affix, apply, or annex, or use in connection with any goods or services, . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

419 F.Supp. 292, 324–25 n.18 (E.D.Pa.1976), *aff'd in part and rev'd on other grounds sub nom. Donsco, Inc. v. Casper Corp.,* 587 F.2d 602 (3d Cir. 1978); *Ames Publishing Co. v. Walker-Davis Publications, Inc.,* 372 F.Supp. 1, 14 (E.D.Pa.1974).

In contrast to previous applications of this vicarious avenger theory, wherein competitors protected the rights of consumers, Plough urges here that it has standing to raise the claims of other competitors arguably injured by Pennwalt's advertising. In the Court's view, the concept of a vicarious avenger is not so broad.

In reviewing the scope of § 43(a) of the Lanham Act, appellate courts have been guided by the tort of "false advertising to the detriment of a competitor" as set forth in the Restatement of Torts § 761 (1934). *See L'Aiglon, supra,* at 651; *Alfred Dunhill Ltd., supra* at 236. Section 761 provides:

One who diverts trade from a competitor by fraudulently representing that the goods which he markets have ingredients or quality which in fact they do not have *but which the goods of the competitor do have,* is liable to the competitor for the harm so caused, if,

(a) when making the representation he intends that it should, or knows or should know that it is likely to, divert trade from the competitor. . . . (Emphasis added)

■ To be sure, § 43(a) represents an expansion of common law remedies. Nevertheless, it was not meant to permit an action by anyone who wished to seek relief thereunder. *Colligan, supra.* The Restatement embodies the concept of standing when it limits recovery to competitors whose products do have the ingredients or qualities falsely attributed to the offender's products. This requirement amounts to nothing more than a showing of injury in fact; i. e., the competitor must demonstrate that but for the false claims, *it* would have enjoyed some financial reward.[5] Consequently, Plough does not have standing as a vicarious avenger to raise the claims of its fellow competitors against Pennwalt.

■ The inquiry is not concluded by this lack of standing. Rather, the propriety of this discovery request must be determined by examining its relevance to the issues that are before the Court. Information relating to test comparisons of DESENEX with athlete's foot products other than AFTATE are relevant to the subject matter involved in this case, and may lead to the discovery of admissible evidence. These test comparisons may bear on the central issue of the relative effectiveness of DESENEX versus AFTATE.

At oral argument, counsel for Plough argued that the methodologies employed in these earlier studies "would be relevant in evaluating the methodology used in the AFTATE versus DESENEX study." (Transcript at 39). Although, as conceded, "that argument may prove too much," it nevertheless suggests that the results of these earlier test comparisons may establish something beyond the effectiveness of DESENEX versus a third athlete's foot remedy. For example, the evaluation of test results necessarily involves the establishment of criteria by which success or failure is measured. Plough is entitled to discover whether the criteria employed in the DESENEX versus AFTATE studies are consistent with those employed in comparisons of DESENEX with other athlete's foot products. Accordingly, discovery by Plough as to athlete's foot products other than DESENEX and AFTATE is proper under F.R. Civ.P. 26.

### III. *Is Discovery As to Test Results Involving the Underlying Medications Found in DESENEX and AFTATE Proper Under Fed.R.Civ.P. 26?*

■ While the parties are unable to agree on a precise formulation of this issue,

---

**5.** As an independent matter, Plough is correct in its assertion that the allegedly false representations need not explicitly or implicitly reference a product of the challenging party. *See, e. g. Alberto-Culver Co. v. Gillette Co.,* 408 F.Supp. 1160, 1163 (N.D.Ill.1976). However, this does not relieve the challenging party of the burden of demonstrating some injury to it flowing from the misrepresentation.

the dispute centers around Plough's request for documents comparing the effectiveness of various chemical compounds found in, or similar to,[6] DESENEX or AFTATE in the treatment or prevention of athlete's foot or any superficial fungus infection of the skin. In support of this request, Plough references the Pennwalt advertising claim that ". . . nothing is better than the medicine in DESENEX, nothing." Plough contends that the efficacy of the underlying medications, in addition to the effectiveness of DESENEX itself, is at issue in the case.

Plough asserts further that the fungal infection causing athlete's foot is identical to the fungal infection responsible for other skin conditions such as "jock itch" and ringworm of the scalp. As such, Plough argues that the performance of the underlying medications in DESENEX in the treatment of these skin conditions elsewhere on the body is relevant to an evaluation of the claimed effectiveness of DESENEX on athlete's foot.[7]

. The propriety of these discovery requests is governed once again by the liberal standard of relevance delineated in Fed.R.Civ.P. 26(b)(1). Viewed objectively, both the complaint and the counterclaim challenge the advertising by a competitor for an athlete's foot remedy in the athlete's foot market. Each claims the resulting harm was a loss of sales of its respective product among consumers seeking relief for athlete's foot. Since Section 43(a) demands at least a showing that the advertising claim has a tendency or likelihood to deceive consumers,

*Gold Seal, supra,* challenged advertisements must be examined in a reasonable commercial context. For example, the claim that "nothing is better than the medicines in DESENEX," read literally, can be construed as an assertion that those medicines are the equal of all others in the treatment of any ailment. Obviously, such a construction ignores the implicit contextual framework of the treatment of athlete's foot.

If Pennwalt's CRUEX, or the medication found in CRUEX but not found in DESENEX, is less effective in treating "jock itch," either on the body or in a test tube, than Plough's competing product or its active ingredient, it simply does not follow that Pennwalt's DESENEX advertisements are false.[8] The relevant tests are those in which DESENEX itself or the underlying medications found in DESENEX are involved. Within the confines of the statutory purpose of Section 43(a) of preventing consumer deception, the effectiveness of different products with different chemical formulae in treating conditions other than athlete's foot is irrelevant to the issues in this case.

Plough may have discovery as to test results in which the chemical formulation marketed as DESENEX is applied *in vivo* to athlete's foot or *in vitro* to the fungus responsible for athlete's foot. In addition, Plough may have discovery as to test results in which the active ingredients found in DESENEX, such as undecylenic acid, are applied independently of other DESENEX

---

6. The chemical compounds, or "active ingredients," in DESENEX include undecylenic acid and zinc undecylenate, the latter being a salt of undecylenic acid. Plough asserts that zinc undecylenate and another salt of undecylenic acid, calcium undecylenate, are active ingredients in Cruex and Caldesene, two of Pennwalt's other products used in the treatment of "jock itch" and diaper rash, respectively. Tolnaftate is the active ingredient in AFTATE FOR ATHLETE'S FOOT.

When marketed as consumer products, these active ingredients are embodied in media called "vehicles," which include creams, ointments, powders and sprays. Apparently, no claim is made that the vehicles employed bear significantly on test results.

7. Comparative testing of these products is conducted by two methods, *in vivo* and *in vitro*. *In vivo* testing consists of application of the product to the affected areas of the body on human subjects. *In vitro* testing involves application of either the complete product or isolated compounds within the product to samples of the fungus in test tubes or other laboratory settings.

8. This is true even if, as claimed, the active ingredient in CRUEX, calcium undecylenate, is transferred into undecylenic acid, a DESENEX active ingredient, when contacted by moist surfaces such as skin. CRUEX is not marketed to treat athlete's foot, nor is DESENEX marketed to treat "jock itch."

ingredients *in vivo* to athlete's foot or *in vitro* to the fungus responsible for athlete's foot. Plough may not have discovery as to test results of products other than DESE-NEX or of active ingredients not found in DESENEX, or as to *in vivo* testing of conditions other than athlete's foot.

IV. *Can the Court Order Discovery by Pennwalt As to Sales and Promotional Costs of TINACTIN, a Product Sold by Schering Corp. Rather Than Plough?*

Pennwalt has sought all documents relating to weekly, monthly, quarterly and annual sales, as well as promotional costs, for TINACTIN, an athlete's foot product manufactured and sold by Schering Corporation. TINACTIN's chemical formulation is claimed to be identical to Plough's AF-TATE. Schering, like Plough, is a wholly-owned subsidiary of Schering-Plough Corporation.

Pennwalt has not referenced advertisements for TINACTIN in its complaint. However, in urging the relevance of these documents, Pennwalt points to Plough's counterclaim, which alleges a diversion of sales from AFTATE to DESENEX caused by Pennwalt's advertising. Pennwalt contends that any drop in AFTATE sales may be attributable to TINACTIN, an identical product, rather than to DESENEX, and that Pennwalt is entitled to discover this information.

Plough opposes the request on two grounds. Plough argues first that the Court has no power to compel production by Schering, which is not a party to this litigation. Alternatively, Plough contends that the requested information is irrelevant to the issues in the case. Since Plough's first argument is correct, it is unnecessary to reach the issue of relevance.

Fed.R.Civ.P. 34(a) provides, in pertinent part:

Any party may serve on any other party a request (1) to produce . . . any designated documents . . . which constitute or contain matters within the scope of Rule 26(b) and *which are in the possession, custody or control of the party upon whom the request is served . . . . (emphasis added)*

■ Production by a corporate litigant may be compelled where requested documents are in the possession and control of a separate corporate entity. This occurs most often when a parent corporation is requested to produce documents of a wholly-owned subsidiary. *See, e. g., George Hantscho Co. v. Miehle-Goss-Dexter, Inc.,* 33 F.R.D. 332 (S.D.N.Y.1963); 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2210 (1970 ed.).

■ Production also has been ordered in at least one case in which the corporate entities were not parent and subsidiary. *Advance Labor Service, Inc. v. Hartford Accident & Indemnity Co.,* 60 F.R.D. 632 (N.D.Ill.1973). There the Court found:

[W]hile Allied Bus Service may technically be a separate corporation, its directors and shareholders are identical to those of the plaintiff and one of the primary functions of Allied Bus Service is to provide transportation for workers employed by the plaintiff.

*Id.* at 633–34. There is no evidence in the instant case, however, that Plough and Schering have identical Boards of Directors, or that their respective business operations are so intertwined as to render meaningless their separate corporate identities.

Since Schering is a separate legal entity from Plough, possibly having different legal and commercial interests at stake, its rights should not be determined *in absentia.* Fed.R.Civ.P. 45 provides a much more appropriate method of obtaining these documents, and offers an opportunity for Schering's views on the matter to be considered. Therefore, the information relating to TINACTIN sales and promotional costs need not be produced pursuant to Pennwalt's document request.