**PENNWALT CORP., Plaintiff,**

v.

**PLOUGH, INC., Defendant.**

**Civ. A. No. 81–227.**

United States District Court,
D. Delaware.

June 23, 1981.

---

Richard D. Allen, and Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff; Matthew J. Broderick, and Aaron C. F. Finkbiner, III, of Deckert, Price & Rhoads, Philadelphia, Pa., of counsel.

Joseph A. Rosenthal, of Morris & Rosenthal, Wilmington, Del., for defendant; Donald H. Green, Robert A. Skitol, and John F. Daly, of Wald, Harkrader & Ross, Washington, D. C. and John R. Stewart, and Richard E. Duerr, Jr., of Plough, Inc., Memphis, Tenn., of counsel.

OPINION

CALEB M. WRIGHT, Senior District Judge.

In this action, plaintiff Pennwalt Corporation ("Pennwalt") seeks to have the Court enjoin Plough, Inc. ("Plough") from running advertisements that include certain claims which allegedly violate the terms of a settlement agreement recently concluded by these parties. The Court concludes, as a matter of contract interpretation, that the claims challenged by Pennwalt are not "covered claims" within the scope of the agreement, and therefore denies the request for injunctive relief.

I. *Factual Background*

Pennwalt filed this action on June 1, 1981, and two days later moved for a temporary restraining order. A hearing was held on June 5, and the Court denied the motion. At that time, Pennwalt indicated its intention to file a motion for a preliminary injunction, and a schedule for briefing and filing of affidavits was set. The Court heard argument on the motion on June 18.

The dispute between Pennwalt and Plough pertaining to the competitive advertising of their athlete's foot products has a long history prior to the filing of this action. In May, 1979, Pennwalt brought a Lanham Act suit against Plough, alleging that Plough had made false, misleading and deceptive claims in its advertisements. *See Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257 (D.Del.1979). Plough counterclaimed in July, 1979, charging Pennwalt with false and deceptive advertising. After lengthy discovery, the parties negotiated a settlement agreement. Judge Schwartz, before whom the action was pending, approved the settlement and dismissed the case without prejudice on April 24, 1981. *See* 85 F.R.D. 257.

At issue in the 1979 litigation was the accuracy of certain claims Plough had made comparing its athlete's foot product, Aftate, to Desenex, the athlete's foot product manufactured by Pennwalt. One print advertisement challenged by Pennwalt included

three claims it considered false or misleading:[1]

> Aftate for athlete's foot is better than Desenex. *Really better...* In independent studies, the medication in Aftate has been proven to be more effective in killing athlete's foot fungus than the medication in Desenex. In fact, doctors recommend the medication in Aftate 14 to 1 over the medication in Desenex.

*See* Plough's Opening Brief at Exh. A.

The settlement agreement established a procedure whereby both parties would submit certain kinds of claims to review by a panel of highly-qualified experts to determine whether the claims had a "substantial and reliable medical and scientific basis," and would refrain from disseminating claims which, in the panel's view, lack such a basis. *See* 85 F.R.D. 257. The instant action, filed scarcely five weeks after the dismissal of 85 F.R.D. 257 turns on the issue whether the claim, "Doctors prescribe the medication in Aftate 10 to 1 over that in Desenex," is a "covered claim" subject to panel review under the settlement agreement. Plough has made this claim in recent print advertisements,[2] and television commercials[3] for Aftate, without having submitted it for review by Pennwalt or the expert panel. Pennwalt contends that Plough thereby breached the settlement agreement.

## II. *Interpretation of the Agreement*

Insofar as a settlement agreement is a contract between the parties, the Court is guided by principles of contract law in interpreting the agreement. *See, e. g., Plym-* outh Mutual Life Insurance Co. v. Illinois Mid-Continent Life Insurance Co., 378 F.2d 389, 391 (3d Cir. 1967). The point of departure for the Court's analysis is the definition, set out in the settlement agreement, of a "covered claim," a claim to be referred to the panel:

> "Covered Claim" refers to any efficacy representation, verbal, visual or otherwise, in which (i) either party makes specific reference to the other party's Covered Product, either alone or with other athlete's foot products, by name or other reference, in an unfavorable comparison with the advertiser's own Covered Product, or (ii) either party states that "Nothing is better than" a Covered Product, that "Nothing is better than the medicine in" a Covered Product, or any like phrase containing "better than" or synonyms for "better than," or (iii) either party states that a Covered Product is "the best" athlete's foot Product or contains "the best" medicine.

¶ 2(a), 85 F.R.D. 257. The agreement goes on to define the term "efficacy," used in the above definition:

> "Efficacy" refers to (i) effectiveness in treating or relieving any sign or symptom of athlete's foot, (ii) ability to control or cure athlete's foot, (iii) effectiveness in preventing the occurrence or recurrence of athlete's foot or (iv) overall effectiveness in treating, controlling, curing, and/or preventing athlete's foot.

*Id.* ¶ 2(g).

The claim at issue here, that doctors prescribe the medication in Aftate more often

---

1. *See* Pennwalt's Supplemental Answers to Plough's Interrogatories, 85 F.R.D. 257. Though these Answers were not filed until January 1981, after the parties had already agreed on the outlines of a settlement, counsel for Pennwalt stated at oral argument that Plough had previously been told that Pennwalt objected to these claims.

2. At oral argument on Pennwalt's motion for a temporary restraining order, the parties stipulated that the claim appeared in an advertisement that ran in the June and July issues of *Playboy*, and in the June issue of *Omni*. *See* Dkt. 20, C.A. 81–227, at 45.

3. The claim in the television commercial differs slightly from that in the print advertisements: "Doctors recommend the medication in Aftate 10 to 1 over that in Desenex." *See* Pennwalt's Brief in Support of Preliminary Injunction Motion at Exh. E. Pennwalt alleges, and Plough does not deny, that this claim was made in a commercial aired on ABC during "Monday Night Baseball" on June 8, 1981. *Id.* at 3 n.1. For purposes of the instant action, the Court regards the difference in wording between the claim made in print and that made on television as immaterial.

than that in Desenex, is clearly a comparative claim. It would therefore come within the definition of a covered claim if it were also an "efficacy representation." The agreement defines "efficacy," in quite broad terms, but does not define "efficacy representation." The issue before the Court reduces, then, to the question whether a comparative claim as to the number of times the medication in each of the products is prescribed constitutes a "representation" as to the products' relative effectiveness in treating athlete's foot.[4]

There can be no doubt that someone reading or hearing the claim is expected to infer from it that Aftate is more effective in treatment than Desenex. Because of this *implication* as to effectiveness, Pennwalt argues that the claim should be deemed an efficacy representation and therefore a covered claim. Plough, on the other hand, contends that such an expansive reading of the agreement is contrary to the intentions of the parties, and would jeopardize the agreement under the antitrust laws and the First Amendment prohibition on prior restraints.

■ In the Court's view, Pennwalt's argument proves too much. Nearly all, if not all comparative claims in advertising are intended to persuade the audience that the sponsoring party's product is superior to that of its competitor; otherwise, the advertisement would simply give the competitor's product free publicity. Thus, if implications and intended inferences are taken into account in deciding what constitutes an "efficacy representation," then comparative claims would generally have to be treated as efficacy representations, and therefore would all be covered claims under the agreement. In order to adopt Pennwalt's position, the Court would in effect have to read the "efficacy representation" require-

ment for covered claims out of the agreement. Given that the agreement was the result of hard bargaining and careful drafting by counsel for both parties, the Court is reluctant to construe the agreement so as to render part of it superfluous. *See, e. g., State v. Dabson*, 9 Storey 240, 217 A.2d 497, 500 (Del.1966).

Moreover, Pennwalt's suggested interpretation is difficult to accept in view of the procedure established in the agreement for determining the truthfulness of covered claims. As this Court stated in the Order of Dismissal in the prior litigation, "the medical and scientific basis for a comparative efficacy claim of athlete's foot products ... is a subject requiring expert analysis and opinion and can best and most expeditiously be decided by a panel of highly-qualified experts...." 85 F.R.D. 257. The panel is to be comprised of *"three medical or other scientific* experts ... each of whom ʻis generally recognized as qualified by virtue of training and experience to evaluate evidence relating to the efficacy of athlete's foot products...." ¶ 2(f), 85 F.R.D. 257 (emphasis added). Under Pennwalt's reading, any comparative claim whose "unmistakable" implication is that one "covered product" is more effective than the other should be subject to review by the panel. On this view, an advertising claim by Plough that, according to a poll, Aftate outsells Desenex among professional athletes by a margin of 2 to 1 would be a covered claim, and would be subject to review by the panel.[5] The fact that only a slight background in statistics, rather than any medical or scientific training, would be necessary to determine the truthfulness of this claim strongly supports the view that only those claims that make direct representations as to comparative efficacy were intended to be covered claims.

---

4. Throughout their briefs, both parties argued the issue of the truth or falsity of the claim. That issue is not before the Court and, in the Court's view, is independent of the question whether the claim is a covered claim.

5. Pennwalt attempts to limit its argument by confining it to only one type out of all the claims that, by implication, speak to compara-

tive efficacy—claims of the type, "Doctors recommend..." or "Doctors prefer...." However, the Court finds no basis in the agreement for singling out this type of claim for special treatment; the implication as to efficacy is equally as strong in claims of the type, "Athletes prefer...."

In view of both the language and the intended purpose of the agreement, the Court concludes that the claim at issue in this action is not a covered claim. It is unnecessary, therefore, to reach the issues whether a broader reading of the covered claim category would jeopardize the agreement under the antitrust laws or the First Amendment.

### III. *Standard for Injunctive Relief*

In deciding whether to grant a preliminary injunction, the Court must consider four factors:

1) whether the movant has made a showing of reasonable likelihood of success on the merits;

2) whether the movant has shown that, absent such relief, it would be irreparably injured;

3) whether other parties interested in the proceedings would be substantially harmed by grant of the injunction; and

4) whether the public interest would be served by granting the relief sought.

*A. O. Smith Corp. v. FTC*, 530 F.2d 515 (3d Cir. 1976). The Court holds that Pennwalt has failed to carry its burden of showing probability of success on the merits. It is unnecessary, therefore, to linger over the other elements of the standard for injunctive relief. Plough has submitted evidence, by affidavit, that the advertising claim challenged here is part of a $1 million marketing campaign, and that issuance of an injunction would have a severe disruptive effect on the campaign.[6] *See* Affidavit of J. Richard Briscoe, Dkt. 11. Pennwalt's allegations as to injury that would result from denial of the relief sought here is less specific and concrete. Moreover, the cases cited in support of Pennwalt's contention that mere allegations of injury to reputation and damage to good will are sufficient to establish irreparable injury, *see* Pennwalt's Opening Brief, Dkt. 16, at 17, are Lanham Act or trademark infringement cases, not contract cases. However, since this motion can be disposed of on the issue of probable success on the merits, the Court need not decide whether Pennwalt has made the necessary showing as to irreparable injury. *See Crane Co. v. Harsco Corp.*, 509 F.Supp. 115, 118 (D.Del.1981).

For the reasons stated above, the Court denies Pennwalt's motion for preliminary injunctive relief. This Opinion shall constitute the Court's Findings of Facts and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

---

6. The peak sales period for athlete's foot products is the summer season. Virtually all of Plough's advertising of Aftate occurs in June, July, and August. *See* Affidavit of J. Richard Briscoe, Dkt. 11.