**NEW CASTLE COUNTY, Plaintiff,**

v.

**U.S. FIRE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 85–436–JLL.**

United States District Court, D. Delaware.

Dec. 27, 1989.

See also 725 F.Supp. 800.

George H. Seitz III of Prickett, Jones, Elliott, Kristol and Schnee, Wilmington, Del., and Joseph A. Tydings and Catherine Serafin Sponseller of Anderson, Kill, Olick & Oshinsky, Washington, D.C., of counsel, for plaintiff.

William J. Cattie III of Heckler & Cattie, Wilmington, Del., and Laurence M. McHeffey of McElroy, Deutsch & Mulvaney, Morristown, N.J., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This dispute between New Castle County ("NCC") and U.S. Fire Insurance Company ("U.S. Fire") is the latest spawn of the Tybouts Corner landfill. Three actions ("the underlying lawsuits") have been filed against NCC concerning pollution leaching from the Army Creek and Tybouts Corner landfills. NCC sought a declaratory judgment against twelve insurance companies for coverage against these claims.[1] U.S. Fire settled with NCC on May 30, 1989, six days prior to trial. *See* Docket Item ("D.I.") 527, at Exhibit 1, ¶ 7.[2] Neither NCC nor U.S. Fire have disclosed the terms of the settlement, except to the extent discussed below.

The current dispute involves NCC's claim that U.S. Fire is responsible for $184,949.13 in legal expenses incurred defending the underlying lawsuits. *See* D.I. 327 at 1. Relying on the settlement agreement, U.S. Fire denied all responsibility for these legal costs. *See* D.I. 527 at Exhibits B, D, and F. NCC filed a Demand for Arbitration with the American Arbitration Association ("AAA") on October 20, 1989, seeking to be awarded the defense costs plus interest. U.S. Fire was subsequently granted a ten-day extension, from November 6 to November 16, 1989, to return the list of arbitrators and Compensation Stipulation forms to the AAA. *See* D.I. 537 at Exhibit E. On November 16, U.S. Fire returned the forms to AAA, *see* D.I. 537 at 7, and filed the "Motion in Equity to Enforce Settlement Agreement and Permanently Enjoin The Arbitration Proceeding" in the instant matter.

## DISCUSSION

Initially, NCC contends that this Court is without jurisdiction to consider U.S. Fire's motion. *See* D.I. 537 at 8. This contention, based on the arbitration clause in the settlement agreement, is incorrect.[3] A court has the inherent authority to enforce agreements settling litigation before it. *See Bowater North America Corp. v. Murray Machinery, Inc.*, 773 F.2d 71, 76–77 (6th Cir.1985) (citing cases); *Rosso v. Foodsales, Inc.*, 500 F.Supp. 274, 276 (E.D. Pa.1980) (citing cases); *Read v. Baker*, 438 F.Supp. 732, 735 (D.Del.1977); *see also Pugh v. Super Fresh Food Markets, Inc.*, 640 F.Supp. 1306, 1307 (E.D.Pa.1986); *Morris v. Gaspero*, 522 F.Supp. 121, 125 (E.D. Pa.1981); *cf. Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3rd Cir.1982) ("[settlement] agreements are specifically enforceable and broadly interpreted"). Both parties assert that the purpose of the settlement agreement was to resolve all claims between them in the Tybouts Corner and Army Creek litigation. *See, e.g.,* D.I. 527

---

1. The twelve insurance companies involved are U.S. Fire Insurance Company, U.S. Liability Insurance Company, Aetna Casualty & Surety Company, Hartford Accident & Indemnity Company, Twin City Fire Insurance Company, Home Insurance Company, Insurance Company of North America, National Union Fire Insurance Company, Continental Insurance Company, Zurich Insurance Company, New Hampshire Insurance Company, and Continental Casualty Company.

2. The Continental Casualty Company was the only insurance company to go to trial.

3. The arbitration clause states:
   (a) If any dispute between the County and U.S. Fire concerning the meaning or operation of this Agreement shall arise, the parties shall use their best efforts to resolve any such dispute through good faith negotiations. If either party contends that the other party has breached the terms of the Agreement, such party will give the other party notice of this contention by certified mail. The party which contends that the Agreement has been breached shall give the other party twenty (20) days from the date of the notice to cure the alleged breach before taking any further action.
   (b) If any such dispute or alleged breach of the Agreement cannot be resolved through negotiations, the county and U.S. Fire agree to submit such dispute for binding arbitration in Washington, D.C., pursuant to the Commercial Arbitration Rules of The American Arbitration Association. The arbitration shall be undertaken by three arbitrators appointed by the American Arbitration Association with the reasonable consent of the parties.
   (c) The arbitrators' determination shall be final and binding, and shall not be subject to any appeal or judicial review. The parties shall bear equally the fees and expenses of the arbitration, unless the arbitrators adopt in full the position advocated by one of the parties, in which case the other party shall bear all such fees and expenses.

at 1; D.I. 537 at iii. Additionally, by entering into a settlement agreement, the parties implicitly consent to the Court's assertion of its jurisdiction to compel compliance with that agreement. *See Cooper–Jarrett, Inc. v. Central Transport, Inc.,* 726 F.2d 93, 96 (3d Cir.1984). Indeed, assertion of jurisdiction to enforce a settlement agreement furthers the federal policy of promoting amicable adjustment of disputes and avoiding costly and time-consuming litigation in federal court. *See Pennwalt Corp.,* 676 F.2d at 80–81; *Pugh,* 640 F.Supp. at 1307; *AMF, Inc. v. Brunswick Corp.,* 621 F.Supp. 456, 462 (E.D.N.Y.1985); *Morris,* 522 F.Supp. at 125; *Rosso,* 500 F.Supp. at 276. This Court, therefore, has the authority to enforce the settlement agreement.

Further, the arbitration clause in the settlement agreement does not affect this Court's jurisdiction. *See Forms, Inc. v. American Standard, Inc.,* 550 F.Supp. 556, 557 (E.D.Pa.1982), *aff'd,* 725 F.2d 667 (3rd Cir.1983); *John Ashe Associates, Inc. v. Envirogenics Co.,* 425 F.Supp. 238, 241 n. 3 (E.D.Pa.1977). The arbitration clause does, however, limit the scope of review. *See Benado v. Buckeye Union Insurance Co.,* 666 F.Supp. 79, 79 (W.D.Pa.1987); *U.S. Fidelity & Guaranty Co. v. Ferraro,* 452 F.Supp. 586, 587 (S.D.Ohio 1978); *John Ashe Associates, Inc.,* 425 F.Supp. at 241 n. 3.

■ Having determined that this action is properly before the Court, the question of the source of substantive law arises. Federal law governs the construction of any transaction involving commerce that includes an arbitration clause. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15 (1982 & West Supp.1989) states that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable." *Id.* at § 2. State as well as federal courts are required to apply the FAA to any contract involving commerce that includes an arbitration clause. *See Southland Corp. v. Keating,* 465 U.S. 1 at 15–16 & n. 7, 104 S.Ct. 852, 860–61 & n. 7,

79 L.Ed.2d 1 (1982); *Moses H. Cone Hospital v. Mercury Construction Co.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1981) (holding that the FAA "create[s] a body of substantive law of arbitrability, *applicable to any arbitration agreement* within the coverage of the Act") (emphasis added); *id.* at 25 n. 7, 103 S.Ct. at 942 n. 7. ("enforcement of the Act is left in large part to the state courts"); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1983) ("the Act declare[s] a national policy applicable equally in state as well as federal courts"); *see also Towers, Perrin, Forster & Crosby, Inc. v. Brown,* 732 F.2d 345, 347–48 (3rd Cir.1984) (noting that it was an error of law for a state court to fail to apply the FAA).[4] Settlement agreements are contracts. *See Pennwalt Corp.,* 676 F.2d at 79; *see also AMF, Inc. v. Brunswick Corp.,* 621 F.Supp. 456 (E.D.N.Y.1985) (Weinstein, C.J.) (applying the FAA to a settlement agreement that resolved litigation where jurisdiction was based on diversity).

■ The settlement agreement between U.S. Fire and NCC "involv[es] commerce." The FAA defines commerce as "commerce among the several states…." 9 U.S.C. § 1 (1982). NCC and U.S. Fire are citizens of different states, and the settlement agreement relates to, at minimum, $184,949.13. This dispute, therefore, is governed by the FAA. As the Fourth Circuit held when applying the FAA to a settlement agreement, "[t]he Act is a statement of Congressional intent in upholding private parties' arrangements for dispute resolution. Thus, the policies of the Act should be effectuated whenever possible, and the federal courts should 'rigorously enforce agreements to arbitrate.'" *Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.,* 867 F.2d 809, 813 (4th Cir.1989) (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)); *cf. Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 401 & n. 7, 87 S.Ct. 1801, 1804 & n. 7, 18 L.Ed.2d

---

**4.** In this regard, the parties' reliance on Delaware state law is misplaced.

1270 (1967) (holding that the FAA applies to diversity cases and noting "that a contract for the purchase of a single can of paint may evidence a transaction in interstate commerce...."); *see also Southland Corp. v. Keating*, 465 U.S. 1, 11–13, 104 S.Ct. 852, 858–60, 79 L.Ed.2d 1 (reaffirming the vitality of *Prima Paint*).[5]

■ When confronted with an arbitration clause, it is the duty of the court to determine the arbitrability of the dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 777–78 (3rd Cir.1984); *Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 585 F.Supp. 770, 780 (E.D.Pa.1984). This determination is informed by the strong federal policy favoring arbitration. *See Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1982); *Sharon Steel Corp.*, 735 F.2d at 777; *Roodveldt*, 585 F.Supp. at 781 (a district court is "bound to act consistently with the federal policy, often reiterated by the Supreme Court, favoring the arbitral process"); *see also Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3353 ("as with any other contract, the parties' intentions control, but these intentions are generously construed as to issues of arbitrability").

The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. Similarly, the Third Circuit requires only that the claim of arbitrability be "plausible" before enforcing an arbitration clause. *Sharon Steel Corp.*, 735 F.2d at 778. In accordance with these dictates, district courts should resolve all doubts in favor of arbi-

tration. *See Sacco v. Prudential–Bache Securities, Inc.*, 703 F.Supp. 362, 364 (E.D. Pa.1988); *Ryan v. Liss, Tenner & Goldberg Securities Corp.*, 683 F.Supp. 480, 483 (D.N.J.1988); *Cardona Tirado v. Shearson Lehman American Express, Inc.*, 634 F.Supp. 158, 159 (D.P.R.1986); *John Ashe Associates, Inc.*, 425 F.Supp. at 243.

The arbitration clause at issue has two operative sections. The first requires the parties to attempt to resolve "any dispute ... concerning the meaning of operation of this Agreement" through negotiation. *See* supra note 3. U.S. Fire does not claim that NCC failed to fulfill its obligation under this section. The second section states that "[i]f any such dispute ... cannot be resolved through negotiations, the county and U.S. Fire agree to submit such dispute for binding arbitration...." *Id.* Therefore, if the current dispute arguably or plausibly concerns the "meaning or operation" of the settlement agreement, U.S. Fire's motion must be denied.

U.S. Fire, at first, did not deny that the current disagreement concerning legal costs is centered upon the meaning and operation of the settlement agreement. Indeed, "U.S. Fire is seeking to enforce the settlement agreement...." D.I. 547 at 2. U.S. Fire points to five paragraphs of the agreement it believes relieves it of any liability. *See* D.I. 527 at 608. In total, the parties rely on at least six different paragraphs of the settlement agreement whose "meaning or operation" must be construed to decide the merits of the legal cost dispute. These sections, *as reported by the parties*, are:

Paragraph 10:

It is further agreed by and between U.S. Fire and New Castle County that

---

**5.** If the Court were to apply Delaware law, the result in this matter would remain unchanged. *See* Del.Code Ann. tit. 10, § 5701 (1975) ("A written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable....").

In addition to the statute, Delaware case law also mirrors federal law. *See, e.g., Falcon Steel*

*Co. v. Weber Engineering Co.*, 517 A.2d 281, 284 (Del.Ch.1986) ("federal and state law ... encourage arbitration and the enforcement of agreements to arbitrate"); *James Julian, Inc. v. Raytheon Service Co.*, 424 A.2d 665, 667 (Del.Ch. 1980) (doubts as to arbitrability are resolved in favor of arbitration).

each fully discharges and releases the other from any obligation and/or claim *to pay attorney fees, any expenses or costs* with respect to the Coverage Actions.

New Castle County will pay U.S. Fire's share of *defense costs* incurred in connection with the underlying litigation and underlying claims pursuant to the Revised Second Defense Agreement from the execution of this Agreement until July 23, 1989;

Paragraph 11:

It is further agreed by and between U.S. Fire and New Castle County that each fully discharges and releases the other from any obligation and/or claim *to pay attorney fees, any expenses or costs* with respect to the Coverage Actions. New Castle County agrees that it will not claim any *right to attorneys' fees, any expenses or costs* in connection with the defense of Underlying Litigation and Underlying Claims and will direct its attorney not to claim any such right from and after the date hereof. New Castle County will pay U.S. Fire's share of *defense costs incurred* in connection with the Underlying Litigation and Underlying claims pursuant to the Revised Second Defense Agreement *from the execution of this Agreement until July 23, 1989;*

Paragraph 12A:

New Castle County and U.S. Fire acknowledge that said payment by U.S. Fire will extinguish any and all obligations on the part of U.S. Fire its parents, subsidiaries, ... which have arisen or which may arise in the future as a result of or in connection with the claims asserted or which may be asserted in the future against New Castle County arising out of or relating to the Llangollen and/or Tybouts Corner Landfills, including, but not limited to, any obligation on the part of U.S. Fire to investigate, defend, *pay defense costs*, settle claims or suits, or pay settlements of judgments relative thereto;

Paragraph 12B:

New Castle County, and its predecessors ..., hereby fully releases and forever discharges U.S. Fire, and releases from any and all claims, actions, causes of action, rights, liabilities, obligations, and demands of every kind and nature, known and unknown, past, present and future for damages and costs of any kind, including punitive, or other legal, statutory, or equitable relief, or *for costs and expenses related to the defense* of any claim arising out of, resulting from, or in any way relating to the Llangollen Landfill or Tybouts Corner Landfill. It is expressly agreed and understood by and between the parties hereto that should any future obligation on the part of U.S. Fire arise out of or be alleged to arise out of the alleged involvement of New Caste County relating to the Llangollen or Tybouts Corner Landfills, New Castle County will not assert that those obligations must be met by U.S. Fire, since this Settlement Agreement and Release is full, complete and final;

Paragraph 12C:

New Castle County, and all of its past and present officers, directors ... hereby fully releases and forever discharges U.S. Fire, its parents, subsidiaries ... of an from any and all claims, actions, causes of action, rights, liabilities, obligations and demands of every kind and nature, known and unknown, past, present and future for damages of any kind, including punitive, or other legal, statutory, or equitable relief, or *for costs and expenses related to the defense* of any claim, arising out of, resulting from, or in any way connected with any action or omission or alleged act or omission relating to the Llangollen and Tybouts Corner Landfills ...;

and, Paragraph 15:

New Castle County, recognizing that U.S. Fire is not paying an amount equal to the full amount of damages incurred by New Castle County or due from New Castle County for any or all of the matters for which New Castle county is releasing U.S. Fire and the Releases, hereby agrees that this compromise and settlement agreement agreed to by New

Castle County fully satisfies U.S. Fire's entire liability to New Castle County, if any, for defense and indemnity in connection with all claims, past, present or future, asserted against New Castle County arising out of or related to Llangollen or Tybouts corner Landfills.

(emphasis added).

■ As the emphasized sections indicate, and U.S. Fire argues, these provisions relate directly to the parties' respective contractual obligations to pay "costs," "expenses," and "attorneys' fees" "incurred" in the defense of the underlying lawsuits. Resolving the merits of this dispute would require the Court to resolve, at least, what the parties intended by "cost," "defense," and "incurred." A determination of the parties' respective obligations in this dispute necessarily requires construing the "meaning or operation" of these provisions. The dispute, therefore, falls within the terms of arbitration agreement, and granting U.S. Fire's motion to "Permanently Enjoin the Arbitration Proceeding" would contravene the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Hospital*, 460 U.S. at 24, 103 S.Ct. at 941. Accordingly, U.S. Fire's motion will be denied.

■ At argument, U.S. Fire contended that the issue was not arbitrable because the settlement agreement was only a release; it did not obligate U.S. Fire to pay anything. The argument concludes that this dispute, therefore, does not fall within the "meaning or operation" of the settlement agreement. This argument fails. The parties intended for the "operation" of the agreement to settle all disputes between the parties arising out of the Tybouts Corner litigation. A potential dispute specifically addressed by the agreement was the payment of attorneys' fees. In fact, the basis of U.S. Fire's argument is that the agreement "operates" to relieve U.S. Fire of all liability for the payment of legal costs and expenses. Looked at in the light most favorable to U.S. Fire,[6] U.S.

Fire's argument is that the merits of the case and the issue of arbitrability are closely intertwined. The Third Circuit has held that such cases are appropriate for arbitration. *See Sharon Steel Corp.*, 735 F.2d at 778–79 (holding that where the claim of arbitrability is plausible, the fact that the issue of arbitrability is closely related to the merits of the dispute does not relieve the parties of the contractual obligation to arbitrate).

The Court notes that U.S. Fire has also moved to enforce the settlement agreement by deciding the merits of the dispute. Denying U.S. Fire's motion to enjoin the arbitration agreement has the effect of enforcing the arbitration provisions of the settlement agreement, although this outcome is not one anticipated by U.S. Fire. U.S. Fire's argument implicitly characterizes the question before the Court as a choice between enforcing the settlement agreement *or* permitting the arbitration to proceed. This characterization is incorrect. A settlement "extinguish[es] the asserted cause of action and ... fix[es] the rights, titles and interests of the respective parties in accordance with the ... agreement." *Morris*, 522 F.Supp. at 125. The parties have bargained for the right to arbitrate any dispute arising out of the agreement. *See id.; see also supra* note 3. "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7, 104 S.Ct. at 852, 856, 79 L.Ed.2d 1 (1984). In this regard, ordering arbitration respects the parties' private contractual arrangements. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Benado*, 666 F.Supp. at 80.

An order incorporating the ruling of this opinion will be filed herewith.

### FINAL JUDGMENT

For the reasons set forth in the Court's Memorandum Opinion entered in this action on this date, it is

**6.** The Court specifically holds that this favorable view of U.S. Fire's argument is not required by the FAA.

ORDERED, ADJUDGED, AND DE-CREED that the "Motion in Equity to Enforce Settlement Agreement and Permanently Enjoin the Arbitration Proceeding" filed by defendant, U.S. Fire Insurance Company, is hereby denied.