**PORT ERIE PLASTICS, INC., Plaintiff,**

v.

**UPTOWN NAILS, LLC, Larry G. Kapfer, Jr., Jim Gleeson, Frank Bruno, and American Arbitration Association, Defendants.**

**Civil Action No. 03–370 Erie.**

United States District Court, W.D. Pennsylvania.

Nov. 18, 2004.

William J. Kelly, Jr., Erie, PA, for Plaintiff.

Thomas V. Incantalupo, Esq., Mitchell & Incantalupo, Forest Hills, NY, John W. McCandless, Esq., Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for Defendants.

## MEMORANDUM OPINION

MCLAUGHLIN, District Judge.

This action presents a question concerning the arbitrability *vel non* of a dispute arising out of the operation of Uptown Nails, LLC, a New York limited liability company (the "Company"). Perceiving that the Plaintiff had breached contractual obligations and engaged in tortious conduct, Defendants filed a demand for arbitration with the American Arbitration Association pursuant to an arbitration clause contained in the Company's operating agreement. The Plaintiff then commenced a declaratory judgment action in the Court of Common Pleas for Erie County, Pennsylvania seeking a declaration that the Defendants' claims were not actionable in light of certain hold harmless language contained in the agreement. The action was removed to this Court on the basis of diversity of citizenship jurisdiction. *See* 28 U.S.C. § 1332(a)(1).[1] Plaintiff has filed a motion for summary judgment and Defendants have countered with a "Cross–Motion For Summary Judgment To Compel Arbitration." For the reasons set forth below, we will deny the Plaintiff's motion and grant the Defendants' motion to compel arbitration.

## I. STANDARD FOR REVIEW

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant. *Big Apple BMW, Inc. v. BMW of North America*,

---

1. The record establishes that the Plaintiff is a citizen of Pennsylvania and the Defendants are citizens of the State of New York. The amount in controversy, as determined by the underlying arbitration demand, exceeds $75,000, exclusive of interest and costs. *See America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir.2004) ("In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute."); *Woodmen of the World Life Ins. Soc. v. Manganaro*, 342 F.3d 1213, 1217 (10th Cir.2003) (in a diversity action to compel arbitration, court looks to possible award resulting from desired arbitration to determine amount in controversy; thus, requisite jurisdictional amount will be lacking only if it is legally certain that the stakes of arbitration are $75,000 or less) (citing cases).

*Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). A court may not consider the weight or credibility of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* But a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001). Moreover, a genuine dispute as to a factual issue exists only if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. BACKGROUND

Plaintiff Port Erie Plastics, Inc. ("Port Erie") is an injected molded plastics manufacturer with a principal place of business located in Harborcreek, Pennsylvania. Defendants Larry G. Kapfer, Jr., Jim Gleeson, and Frank Bruno are individuals residing in New York City.

In the Fall of 1999, Kapfer and principals of Port Erie discussed the possibility of entering into a business venture involving the design, manufacturing, and wholesale distribution of cosmetic fingernails. Negotiations ensued and culminated in the formation of a New York limited liability company, Defendant Uptown Nails, LLC, to carry out the business venture. The Company's members included Plaintiff and Defendants Kapfer, Gleeson and Bruno as well as another individual (not a party to this action) by the name of Craig Arnold. Since its inception, Defendant Kapfer has served as the Company's general manager. Defendants Gleeson and Bruno are passive investors. Port Erie was to be the Company's guaranteed exclusive supplier of cosmetic nails during the first five years of operations.

On May 17, 2000, the members of Uptown Nails, LLC entered into an agreement relative to the operation of the Company (the "Operating Agreement") which sets forth various rights, privileges, duties and obligations of the Company's members. The following paragraph was incorporated into the Operating Agreement under the section entitled "Personal Services":

(c) The Company will use [Port Erie] exclusively as the injection molder for UPTOWN NAILS artificial nails, quick stick and nail organizer for the period covering the beginning of this agreement through June 30, 2005. [Port Erie] will honor the previously agreed upon prices for such product for the period covered exclusive of changes in material/resin costs. At the conclusion of the five (5) year period ending June 30, 2005 continued use of [Port Erie] will be predicated on receiving the most competitve [sic] costs, highest possible quality and timely deliveries.

(Uptown Nails, LLC Operating Agreement, Art. V, ¶ 5 (emphasis supplied).)

In addition, the Operating Agreement contains a "hold harmless" provision, which reads as follows:

5. *Liability and Indemnification.*

(a) The General Manager shall not be liable, responsible, or accountable, in damages or otherwise, to any Member, to the Company, or for any of the Company's liabilities as a result of any act performed by the General Manager within the scope of the authority conferred on the General Manager by this Agreement, except for actions or omissions constituting fraud, gross negligence, or an intentional breach of this Agreement or applicable law. *Likewise, a Member shall have no personal liability hereunder except if otherwise set forth herein.*

(b) The Company shall indemnify the General Manager for any act performed by the General Manager within the scope of the authority conferred on the General Manager by this Agreement, except for actions or omissions·constituting fraud, gross negligence, or an intentional breach of this Agreement or applicable law. The Company shall promptly notify the Members whenever the General Manager has been so indemnified by the Company. A member may not be personally liable as either a Member or as General Manager for the liabilities of the Company. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under this Agreement or the Act shall not be grounds for imposing personal liability on the Members or General Manager for the liabilities of the Company.

(c) The Company shall indemnify the Members for all costs, losses, liabilities, and damages paid or accrued by such Member in connection with the business of the Company to the fullest extent provided or allowed by the laws of New York.

(Uptown Nails, LLC Operating Agreement, Art. V, ¶ 5 (emphasis supplied).)

The agreement also contains a choice-of-law provision and an arbitration clause which provide, respectively:

5. *Applicable Law.* ALL QUESTIONS CONCERNING THE CONSTRUCTION, VALIDITY, AND INTERPRETATION OF THIS AGREEMENT AND THE PERFORMANCE OF THE OBLIGATIONS IMPOSED BY THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

\* \* \*

8. *Jurisdiction and Venue.* Any dispute arising out of this agreement shall be resolved by binding arbitration to be administered pursuant to and in accordance with the American Arbitration Association.

(Operating Agreement, Art. IX, ¶¶ 5 and 8.)

Disputes arose in the course of business operations and, on or around August 29, 2003, Uptown Nails served an arbitration demand upon Plaintiff. The demand form lists the "nature of the dispute" as "Breach of operating agreement; Breach of Fiduciary duty; Breach of contract; Failure to supply custom goods; Negligence; Tortious interference with contract; Prima facie tort." By way of relief, Uptown Nails asserted damages in the amount of $3 million for loss of individual member investments, $9.21 million for loss of past business profits, and $12.43 million for loss of future earnings. It is Defendants' theory that the cosmetic nails supplied by Port Erie were substantially nonconforming and inferior in quality, resulting in widespread customer dissatisfaction and, ultimately, the company's demise. Defendants maintain that this case, including Plaintiff's defense based upon the hold-harmless clause, should be referred to arbitration consistent with Article IX, ¶ 8 of the Operating Agreement.

Not surprisingly, Plaintiff sees matters a bit differently. For one, Plaintiff maintains that it supplied cosmetic nails to the Company consistent with the stated design parameters and that the losses suffered by Uptown Nails resulted from factors unrelated to product quality, such as mismanagement on the part of Kapfer and his associates. Plaintiff avers that, almost from the beginning, the Company fell substantially in arrears with its payments to Port Erie, causing Port Erie to incur loss-

es and, ultimately, to stop manufacturing and delivering product to Uptown Nails. Regardless, Plaintiff contends that it cannot be held liable under any of the theories delineated in the Defendants' demand for arbitration by virtue of the language in the hold harmless clause. Most significant for present purposes, Plaintiff insists that there is no dispute capable of being referred to arbitration because the hold harmless clause, according to Plaintiff, bars Defendants' claims on their face. Fundamentally, then, we must determine the appropriate forum for resolution of these issues.

## III. DISCUSSION

Although neither side has focused its analysis on the Federal Arbitration Act, we begin by considering the Act's applicability to this case. Section 2—the Act's primary substantive provision—states that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "commerce," as defined in § 1 of the Act, includes "commerce among the several States." Id. at § 1. Section 4 of the Act allows a party who is aggrieved by the failure or refusal of another to abide by an arbitration agreement to petition the district court for an order "directing that such arbitration proceed in the manner provided for in such agreement." Id. at § 4. If the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, it "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

In determining whether the FAA requires that arbitration be compelled in this matter, we must resolve three issues: (1) whether the FAA governs the transaction/agreement between the parties; (2) whether the agreement at issue requires the parties to arbitrate their disputes; and (3) whether the dispute in question is covered by the arbitration clause in the agreement. See Flanagan v. Matco Tools Corp., No. Civ. A. 96–1181, 1996 WL 131125 at *2 (E.D.Pa. Mar.21, 1996); Pennsylvania Data Entry, Inc. v. Nixdorf Computer Corp., 762 F.Supp. 96, 98 (E.D.Pa.1990); John Ashe Assoc., Inc. v. Envirogenics Co., 425 F.Supp. 238, 241 (E.D.Pa.1977).

As to the first inquiry, we conclude that the underlying agreement between the parties falls within the FAA's parameters. There is no question that the arbitration clause in the Operating Agreement is a "written provision" as required by § 2 of the Act. It is equally evident that the Operating Agreement concerns a transaction involving interstate commerce. Plaintiff is a Pennsylvania corporation, while Uptown Nails is a New York limited liability company and the individual Defendants are all residents of New York. Under the Operating Agreement, Plaintiff was the LLC's exclusive supplier of cosmetic nails which formed part of a kit that was sold throughout the United States and abroad. The Operating Agreement clearly evidences a transaction involving commerce "among the several states" and thereby satisfies the statutory threshold for application of the FAA. See New Castle County v. U.S. Fire Ins. Co., 728 F.Supp. 318, 320 (D.Del.1989) ("State as well as federal courts are required to apply the FAA to any contract involving commerce that includes an arbitration clause.").

Turning to the second inquiry, we also readily conclude that the Operating Agree-

ment requires the parties to arbitrate their disputes. There is no question that the agreement contains a written arbitration clause. The clause is broad in scope, requiring that "[a]ny *dispute arising out this agreement* . . . be resolved by binding arbitration to be administered pursuant to and in accordance with the American Arbitration Association." (Operating Agreement, Art. IX, § 8 (emphasis supplied).). Although Plaintiff debates the applicability of the arbitration clause to this dispute, it does not attack the *validity* of either the Operating Agreement or the arbitration clause. Accordingly, the second prong is satisfied.

■■■ Finally, we must determine whether the dispute in question is covered by the arbitration clause—a point which is squarely debated by the parties. Defendants maintain that this matter must be referred to arbitration, consistent with the arbitration clause, because Port Erie has already voluntarily appeared in the arbitration proceeding, because Port Erie unilaterally submitted the question of venue for AAA determination, and because Port Erie failed to institute an action to stay arbitration within the statutory period allowed under New York State law.

We think Defendants' analysis misses the mark in certain respects. For one, the mere presence of a generic choice-of-law provision does not, by itself, evidence an intent by the parties to incorporate into the Operating Agreement New York rules of arbitration. *See Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 289 (3d Cir.2001) (holding that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties

intended to opt out of the FAA's default regime). Consequently, Defendants' argument that Plaintiff has waived its opportunity to stay the arbitration under New York procedural rules is not helpful. More fundamentally, however, we need not concern ourselves with Plaintiff's conduct in the arbitration proceedings in order to determine whether arbitration must be compelled under the FAA. Once we conclude, as we have, that the FAA is applicable to this action and that the parties have made a valid agreement to arbitrate, we need only determine whether the dispute in question falls within the parameters of the arbitration clause. If it does, then we are constrained to compel arbitration. And, moreover, when the parties have made a broad agreement "to submit all questions of contract interpretation to the arbitrator," our inquiry is even more narrow: we need only ascertain "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir.2001).

■■■ Whether an issue governed by the FAA is referable to arbitration is determined by reference to federal law. *See General Electric Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir.2001); *Medtronic*, 247 F.3d at 54; *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 178 (3d Cir.1999); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir.1978).[2] Here, the parties have entered into a broad agreement to arbitrate "[a]ny dispute arising out of [the Operating] [A]greement." (Operating Agreement at Art. IX, § 8.) The Third Circuit Court of

**2.** Although we rely on federal substantive principles in concluding that the within dispute is arbitrable, we perceive that our conclusion would be the same even if we were to rely on New York Law. Neither party has cited any provision of New York law relative to the allocation of authority between courts and arbitrators as would require us to determine the validity of Port Erie's hold-harmless defense under these facts.

Appeals has given "an expansive interpretation" to such phrases:

> As we explained in *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir.2000), "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction." Coupled with our usual strong presumption in favor of arbitrability, *see, e.g., Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 (3d Cir.1984), a clause providing for the arbitration of all matters "arising from" an agreement overwhelmingly suggests that a given dispute is arbitrable.

*Medtronic AVE Inc. v. Cordis Corp.*, No. 04–1042, 100 Fed.Appx. 865, 868, 2004 WL 1557328 at *2 (3d Cir. April 30, 2004). *Accord, Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Internat'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993) (interpreting an arbitration clause applying to disputes "arising out of the agreement" as covering "any dispute between the contracting parties that is in any way connected with their contract").

■ We have little difficulty concluding that the dispute in this case falls within the scope of arbitrable issues set forth in the Operating Agreement. Plaintiff, notably, has not denied that the present dispute "arises out of" the agreement. Instead, Plaintiff insists that there is no matter suitable for arbitration because, in Plaintiff's view, the Defendants' claims are facially barred by the Operating Agreement's hold-harmless language. Thus, Plaintiff itself relies on the Operating Agreement in defense of the arbitration claims. As we see it, the immediate issue is *who*—court or arbitrator—should adjudicate the effect, if any, of the hold-harmless clause on Defendants' arbitration claims. We conclude that, because Plaintiff is asserting a defense which is intimately tied to the merits of Defendants' underlying arbitration claims, Plaintiff's hold-harmless argument must be resolved in arbitration. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver, delay, or a like defense to arbitrability.*" *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis supplied). Other federal courts have reached similar conclusions in analogous situations. *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131–32 (9th Cir.2000) (concluding that "the federal law of arbitrability under the FAA governs the allocation of authority between courts and arbitrators" notwithstanding general choice-of-law provision, and, under federal law, a res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator, not the court); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir.1996) (as a matter of federal law, appellant's assertion of claim preclusion was a legal defense to the underlying arbitration claims and, as such, was a component of the dispute on the merits appropriate for resolution by an arbitrator); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F.Supp. 125, 131 (S.D.N.Y.1993) (under federal law, "*any* limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute—is an issue to be addressed by the arbitrators.") (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991) (emphasis in original)).

Having determined that the instant case is referable in its entirety to arbitration, we need not (and, indeed, cannot) consider the merits of Port Erie's hold-harmless defense. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d at 55 ("If the court determines that there is an agreement to arbitrate and that the issue in dispute falls within the scope of the agreement, it must submit the matter to arbitration without ruling on the merits of the case.") (citation omitted). Instead, we will grant Defendants' motion for summary judgment insofar as it seeks an order compelling arbitration of the within dispute.

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiff's motion for summary judgment will be denied and the Defendants' motion for summary judgment seeking an order to compel arbitration of this case and controversy will be granted. An appropriate order follows.

AND NOW, *to wit*, this day of November, 2004, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion [Doc. No. 16] for Summary Judgment is DENIED and Defendants' Cross–Motion [Doc. No. 18] for Summary Judgment and to Compel Arbitration is GRANTED.

The parties are hereby ordered to proceed to arbitration before a panel of the American Arbitration Association within this judicial district. *See* 9 U.S.C. § 4.